Mr. Fassil Gabremariam Chairman, Tampa Port Authority Post Office Box 2192 Tampa, Florida 33601-2192
Dear Chairman Gabremariam:
You ask substantially the following question:
Does section 253.12(9), Florida Statutes, divest the Tampa Port Authority of its right, title, and interest in tidally influenced islands bordering on or being on sovereignty land within Hillsborough County, which lands and islands have been permanently extended, filled, added to existing lands, or created before July 1, 1975, by fill?
In sum:
Title to property conveyed to the Tampa Port Authority under the 1948 certificate of necessity was judicially adjudicated in 1956 and, therefore, is exempt from section 253.12(9), Florida Statutes. For those additional lands conveyed under the 1970 certificate of necessity, while there is language in section253.12(9) indicating that its provisions may apply to any publicly-owned sovereignty lands, it may be advisable to seek legislative or judicial clarification on this issue in light of the state's transfer of its title and interest in such lands under the 1970 certificate.
The Tampa Port Authority (Authority), formerly the Hillsborough County Port Authority, was created to serve as the governing body of the Hillsborough County Port District.[1] Section 6 of its enabling legislation provides:
Title to, right of entry upon, and the right to regulate the improvement of any and all submerged lands belonging to the State of Florida contained within the area designated in Section 2 of this Act [establishing the boundaries of the port district] are hereby granted to the Port Authority, subject to the riparian rights of the respective owners of the uplands adjacent thereto. Such titles and rights shall effectually and fully vest in said Port Authority from time to time upon said Authority filing with the Trustees of the Internal Improvement Fund of the State of Florida a certificate of territorial designation and of requirement or necessity of and for such submerged lands or any part thereof, and no action by said Trustees shall be required to vest the title to the submerged lands so designated in said Authority. . . .
As required by section 6, the Authority filed a Certificate of Territorial Designation and of Requirement with the Board of Trustees for conveyance of all submerged lands belonging to the State within the port district.[2]
In 1951, the Legislature amended section 253.12, Florida Statutes, to vest title to all sovereignty tidal water bottoms, except those lands in Dade and Palm Beach counties, in the Board of Trustees of the Internal Improvement Trust Fund.[3] Subsection (2) of the act, however, provided:
All conveyances of sovereignty lands heretofore made by the Trustees of the Internal Improvement Fund of Florida subsequent to the enactment of Chapter 6451, Laws of Florida, Acts of 1913, and Chapter 7304, Laws of Florida, Acts of 1917, are hereby ratified, confirmed, and validated in all respects.[4]
Litigation subsequently ensued to determine whether the Authority or the Board of Trustees of the Internal Improvement Trust Fund owned title to all submerged lands located within the port district. The final decree in Hillsborough County Port Authority v. Collins[5] held in pertinent part:
The Hillsborough County Port Authority is vested with all the right, title and interest of the State of Florida in and to all the submerged lands located within the area of the Hillsborough County Port District, all of which submerged lands were described and set forth in the Certificate of Territorial Designation and Requirement of Necessity, dated January 9, 1948 . . . and received for filing by the said Trustees of the Internal Improvement Fund on January 14, 1948, title to which was vested in the State of Florida immediately prior to the receipt by the Trustees . . . of said Certificate . . . and the Hillsborough County Port Authority has full power, right and authority of any nature whatsoever to regulate and control the use of said submerged lands, subject only to the provisions of Section 6, Chapter 23338 of the Special Laws of the State of Florida, 1945.
The court held that the Trustees of the Internal Improvement Fund had no right, title, interest or claim in the submerged lands located within the Hillsborough County Port District as described in the certificate and had no right to regulate, control or sell such submerged lands. The court found that section 253.12, Florida Statutes 1951, was intended to confirm and ratify title in the Authority in such submerged lands and the provisions of subsection (1) did not operate to divest title to such lands.[6]
In 1970 the port authority's enabling act was amended to include all submerged lands located within Hillsborough County.[7] A second Certificate of Territorial Designation and of Requirement covering the submerged lands located within the boundaries of the Hillsborough County Port District was subsequently filed with the Board of Trustees.[8]
In 1993 section 253.12, Florida Statutes was amended to add subsections (9) and (10), which respectively provide:
(9) All of the state's right, title, and interest to all tidally influenced land or tidally influenced islands bordering or being on sovereignty land, which have been permanently extended, filled, added to existing lands, or created before July 1, 1975, by fill, and might be owned by the state, is hereby granted to the landowner having record or other title to all or a portion thereof or to the lands immediately upland thereof and its successors in interest. Thereafter, such lands shall be considered private property, and the state, its political subdivisions, agencies, and all persons claiming by, through, or under any of them, shall be barred from asserting that any such lands are publicly owned sovereignty lands. The foregoing provisions shall act to transfer title only to so much of such extended or added land as was permanently exposed, extended, or added to before July 1, 1975. A showing of dates by which certain lands were filled or added to may be made by aerial photograph or other reasonable method. Upon request of the landowner and submission of a proposed legal description and aerial photographs or other evidence accompanied by a fee set by the board reflecting the actual administrative cost of processing, the board shall provide an appropriate legal description of the waterward boundary line as of July 1, 1975, in a recordable document. The Legislature specifically finds and declares these grants to be in the public interest. The boundary between state-owned sovereignty lands and privately owned uplands is ambulatory and will move as a result of nonavulsive changes. This subsection shall not grant or vest title to any filled, formerly submerged state-owned lands in any person who, as of January 1, 1993, is the record titleholder of the filled or adjacent upland property and who filled or caused to be filled the state-owned lands.
(10) Subsection (9) shall not operate to affect the title to lands which have been judicially adjudicated or which were the subject of litigation pending on January 1, 1993, involving title to such lands. Further, the provisions of subsection (9) shall not apply to spoil islands nor to any lands which are included on an official acquisition list, on July 1, 1993, of a state agency or water management district for conservation, preservation, or recreation, nor to lands maintained as state or local recreation areas or shore protection structures. (e.s.)
Section 82 of Chapter 93-206, Laws of Florida, provides that the conveyance of property under the act is intended to be complete and effective without reference to or compliance with other statutory provisions. Thus, subsection (9) of section 253.12, Florida Statutes, read in conjunction with section 82, Chapter 93-206, Laws of Florida, purports to constitute a complete and effective method of conveyance of such property.
Lands held by Port Authority under 1948 Certificate
Title to the lands held by the Authority pursuant to the Certificate of Territorial Designation and of Requirement executed in July 1948 and filed with the Board of Trustees, was judicially adjudicated in 1956 in Hillsborough County Port Authority v. Collins, supra. As quoted above, section 253.12(10), Florida Statutes, exempts those lands, the title to which has been adjudicated or is pending as of January 1, 1993, from operation of section 253.12(9).
Thus, under the exception afforded by section 253.12(10), Florida Statutes, section 253.12(9), Florida Statutes, does not apply to those lands of the Authority that were conveyed to the Authority under the 1948 Certificate of Territorial Designation and of Requirement and were the subject of litigation in Collins, supra.
Accordingly, I am of the opinion that those properties conveyed to the Tampa Port Authority under the 1948 certificate of necessity are not subject to section 253.12(9), Florida Statutes.
Lands acquired by Port Authority under 1970 Certificate
The boundaries of the port authority were expanded in 1970 and title to additional state sovereignty lands was conveyed to the Authority. Title to these additional sovereignty lands, however, has not been judicially adjudicated. Thus, the exception afforded by section 253.12(10), Florida Statutes, is not applicable.
The applicability of section 253.12(9), Florida Statutes, to sovereignty lands, the title to which is held by an entity other than the Board of Trustees of the Internal Improvement Trust Fund, has not been determined by the appellate courts of this state. Nor has an examination of the legislative history surrounding the enactment of Chapter 93-206, Florida Statutes, provided assistance regarding the statute's application to such lands. Unlike the 1951 legislation amending section 253.12, which specifically confirmed and ratified previous transfers of title, the 1993 legislation provides an exception only for those lands the title to which has been judicially established.[9]
Section 253.12(9), Florida Statutes, refers to the state's right, title, and interest in sovereignty lands. Title to, and the interest in, the additional state sovereignty land acquired under the 1970 certificate, however, have been transferred to the authority. Therefore, a question exists whether the state retains any interest in such lands.[10]
Subsection (9) provides that the grant of the state's right to such property is effective against claims by the state, its political subdivisions, and all persons claiming title by or through them that the property is publicly-owned sovereignty lands. Such language may indicate an intent to apply the grant of lands to any publicly-owned sovereignty lands, regardless of whether title is vested in the board of trustees or another public entity. So applied, the subsection would divest the authority of its right, title, and interest in tidally influenced islands bordering on or being on those supplemental sovereignty lands within Hillsborough County that were conveyed to the authority in 1970 if such lands and islands have been permanently extended, filled, added to existing lands, or created before July 1, 1975. Application under the statute is to be made to the Board of Trustees of the Internal Improvement Trust Fund, which is required to provide an appropriate legal description of the waterward boundary as of July 1, 1975, in a recordable document.
In light of the questions raised regarding the applicability of section 253.12(9), Florida Statutes, however, it may be advisable to seek legislative or judicial clarification on this issue.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Chapter 23338, 1945 Laws of Florida.
[2] The certificate was executed on January 9, 1948.
[3] See, s. 1, Ch. 26776, 1951 Laws of Florida.
[4] Section 2, Ch. 26776, 1951 Laws of Florida.
[5] Case No. 103251-C (Fla. 13th Jud. Cir. July 23, 1956).
[6] See, s. 2, Ch. 26776, supra, which specifically ratified previous conveyances by the Trustees.
[7] See, Ch. 70-716, Laws of Florida.
[8] The 1970 certificate was dated November 19, 1970, and received for filing on May 28, 1971.
[9] See, Ch. 57-362, Laws of Florida, amending s. 253.12 to exclude "submerged lands heretofore conveyed by deed or statute" from subsection (1) of the statute.
[10] Cf., State ex rel. Buford v. City of Tampa, 102 So. 336 (Fla. 1924).